ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/13/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROMAN KAINZ,

           Plaintiff,

- against -

BRUCE T. BERNSTEIN, RICHARD K. ABBE,
ANDREW R. HEYER, DONALD E. STOUT,
SALVATORE GIARDINA, JOHN ENGELMAN,
WILLIAM PHOENIX, ANDREW D. PERLMAN,
and XPRESSPA GROUP, INC. f/k/a Form
Holdings Corp.,

           Defendants.

19 Civ. 2499 (LLS)

MEMORANDUM & ORDER

Plaintiff Roman Kainz alleges violations of the Securities Act of 1933 and Securities Exchange Act of 1934, breach of contract, and fraud in the inducement in connection with the merger of XpresSpa Holdings, LLC and XpresSpa Group, Inc. (formerly known as Form Holdings Corp.).

Defendants move to dismiss plaintiff's claims for failure to state a claim upon which relief can be granted.

Plaintiff cross-moves for a partial stay of this action pending the outcome of an appeal before the Second Circuit in the related action, <u>Binn et al. v. Bernstein et al.</u>, 17 Civ. 8594 (2d Cir. 19-1636).

For the reasons that follow, defendants' motion is granted, and plaintiff's cross-motion is denied.

## BACKGROUND

XpresSpa Holdings, LLC ("XpresSpa Holdings") was an airport

spa business.  Plaintiff Roman Kainz invested over $1 million in XpresSpa Holdings, holding an interest of less than five percent.

On August 8, 2016, XpresSpa Holdings executed a Merger Agreement with defendant XpresSpa Group, Inc. (named Form Holdings Corp. at the time).  The Merger Agreement required unitholders representing 95 percent of XpresSpa Holdings units to join the Merger Agreement by signing a Joinder Agreement. Sefick Decl. Ex. C § 6.2(m).

The merger closed on December 23, 2016.[1]  As a result, Mr. Kainz's interest in XpresSpa Holdings was exchanged for XpresSpa Group shares.  After the merger, Form Holdings Corp. changed its name to XpresSpa Group, Inc. ("XpresSpa Group").

Defendants Mr. Bernstein, Mr. Abbe, Mr. Heyer, Mr. Stout, Mr. Giardina, and Mr. Engelman are on XpresSpa Group's Board of Directors.  Mr. Perlman was on XpresSpa Group's Board until April 19, 2018, and served as XpresSpa Group's CEO until April of 2018.  Before the merger, Mr. Bernstein and Mr. Heyer were also on XpresSpa Holdings' Board of Directors.

---

[1] Form Holdings Corp., Current Report (Form 8-K) (Dec. 23, 2016).  See Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.") (citations omitted).

Mr. Bernstein owns and controls the investment entity Rockmore Investment Master Fund Ltd. ("Rockmore"), which gave XpresSpa Holdings a $6 million credit facility at an interest rate of 12% per annum ("Rockmore Note") on April 22, 2015.

Defendant Mr. Phoenix is the Managing Director of Mistral, which was the majority owner of XpresSpa Holdings before the merger.

Mr. Kainz alleges that defendants made numerous misrepresentations and omissions concerning the merger that induced him to sign a Joinder Agreement and become a party to the Merger Agreement:

- Mr. Bernstein and Mr. Heyer falsely "made statements to the effect that the merger" with Form Holdings Corp. was XpresSpa Holdings' "only option" when there were other available merger opportunities. Compl. ¶ 74.

- XpresSpa Group's Form S-4's valuation of the merger consideration that Mr. Kainz and other XpresSpa Holdings members would receive was "false and misleading because Defendants had inflated the value of the remaining patent monetization assets" and "cash assets" of XpresSpa Group. Id. ¶¶ 112-13.

- Mr. Bernstein told Moreton Binn, a co-founder and former CEO and board member of XpresSpa Holdings, that "Rockmore could sell the Rockmore Note" to Form Holdings, which "would obtain ownership" over XpresSpa Holdings "as a result of the default conditions of the Rockmore Note." Id. ¶ 75. "This statement was misleading because it omitted the fact that Abbe at that time held both an interest in the Rockmore Note and a position on the board" of XpresSpa Group. Id. ¶ 76.

- Mr. Bernstein represented that "the Rockmore Note would be paid off in full shortly following" the merger. Id. ¶ 86. "This statement was false because" Mr. Bernstein, Mr. Abbe,

-3-

Mr. Perlman, and Mr. Giardina (together, the "Controlling Group") "secretly intended not to pay off this obligation and, instead, to use it to exert undue control over" XpresSpa Group. Id.

- Defendants represented in their proxy statements and other materials that the terms of the Rockmore Note "were reflective of market rates as of the time of issuance." Id. ¶ 108. "This statement was false and materially misleading because the terms of the Rockmore Note are onerous on their face." Id.

- Defendants "failed to disclose in the Form S-4 that Abbe held an interest in the Rockmore Note and that by way of their control over and interest in the Rockmore Note, Bernstein and Abbe would have undue control over the operations of a post-merger" XpresSpa Group. Id. ¶ 105.

- Defendants "failed to disclose and omitted material facts concerning their numerous and overlapping business relationships." Id. ¶ 87.

- Defendants failed to disclose the Controlling Group's "history of using debt facilities to exert undue control over public companies." Id. ¶ 107.

- Defendants failed to disclose various quid pro quo agreements among them. In exchange for Mr. Heyer's support of the merger, "the Controlling Group promised to grant to Heyer" shares of XpresSpa Group "and to grant Heyer's fund, Mistral, the opportunity to invest" in XpresSpa Group "before the merger." Id. ¶ 65. Mr. Bernstein was appointed to the board of another company, Neurotrope, for his "assistance in facilitating the merger." Id. ¶ 88. In exchange for Mr. Perlman's "cooperation in furthering the scheme," the Controlling Group granted him "the maximum amount of equity compensation permitted" under the newly amended executive compensation plan, and appointed him to the board of Neurotrope. Id. ¶ 119.

- Mr. Engelman and Mr. Stout "had a duty to obtain knowledge of the truth and accuracy of the disclosures made in materials filed with the SEC before signing or authorizing the filing of such materials." Id. ¶ 124. They "misrepresented, by omission or otherwise, the true nature of the relationship between the Controlling Group by

> deliberately refraining from taking those steps necessary to discover whether statements by the Controlling Group" and XpresSpa Group "were false or misleading." Id.

Those allegations are the same as those alleged as the basis for the claims in the related Binn v. Bernstein action, which this Court dismissed in a summary judgment opinion on May 21, 2019. Binn v. Bernstein, No. 17 Civ. 8594 (LLS), 2019 WL 2461816 (S.D.N.Y. May 21, 2019). The plaintiffs in Binn v. Bernstein appealed that decision on June 2, 2019; briefing of that appeal is still unfinished, and no date has been set for argument.

Mr. Kainz makes the additional allegation that Mr. Bernstein sent an email on December 27, 2016 falsely representing to Mr. Kainz that "The Joinder Agreement acknowledges that you, the Joinder Party, will become part of the Merger Agreement. Without signing the Joinder Agreement, you will not be able to receive the new securities in Form that will be given in exchange for the Xspa shares." Maloney Decl. Ex. 7.

In reliance on defendants' misrepresentation and omissions, Mr. Kainz executed a Joinder Agreement in late December of 2016. He alleges that he was injured because XpresSpa Group's stock price fell after the merger as a result of the misrepresentations. He also alleges that because the Joinder Agreement released "Bernstein, Mistral, and others of all

liability for their misconduct in connection with the merger," "signing the Joinder Agreement deprived Plaintiff of valuable legal claims he could have asserted against Heyer, Mistral, and their affiliates, thereby causing Plaintiff losses." Compl. ¶¶ 123, 173.

**DISCUSSION**

1.

Defendants move to dismiss the complaint. Plaintiff partially opposes defendants' motion only with respect to Mr. Bernstein's December 27, 2016 email.

Plaintiff recognizes that his other claims arise "from the same subject matter" and "are substantially the same as" some of the claims now on appeal. Pl. Br. at 3, 12. Accordingly, those claims are dismissed as governed by the rulings in Binn v. Bernstein, and the judgment of dismissal can be immediately appealed for joinder with the pending appeal in that case, which would in any event control the result in this one.

2.

Plaintiff's additional fraud in the inducement and Securities Exchange Act violation claims with respect to Mr. Bernstein's email remain to be addressed.

"Under New York law, a claim for fraud in the inducement requires: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the

-6-

defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Palatkevich v. Choupak, 152 F. Supp. 3d 201, 222-23 (S.D.N.Y. 2016) (citation and internal quotation marks omitted). Similarly, "To state a claim under Rule 10b-5 for misrepresentations, a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 105 (2d Cir. 2007).

Plaintiff argues that because the Merger Agreement only required unitholders of 95 percent of XpresSpa Holdings units to sign Joinder Agreements, Mr. Bernstein's statement, "Without signing the Joinder Agreement, you will not be able to receive the new securities in Form that will be given in exchange for the Xspa shares" was false, as plaintiff owned less than five percent of XpresSpa Holdings and thus did not need to sign the Joinder Agreement for the merger to close and to obtain his XpresSpa Group shares.

The merger closed on December 23, 2016, and Mr. Bernstein made the alleged misstatement on December 27, 2016. Mr. Kainz alleges that he executed the Joinder Agreement "in late December

-7-

2016," compl. ¶ 176, but does not specify which day.

If Mr. Kainz signed the Joinder Agreement before the merger closed, he could not have relied on Mr. Bernstein's statement, which did not occur until four days later.

If Mr. Kainz signed the Joinder Agreement after Mr. Bernstein's email and after the merger had already closed, his interest in XpresSpa Holdings would by then have been exchanged for XpresSpa Group shares regardless of whether or not he signed it. Thus, Mr. Bernstein's statement could not have been the cause of the decreased value of Mr. Kainz's XpresSpa Group shares. See Grace v. Rosenstock, 228 F.3d 40, 49 (2d Cir. 2000) (affirming dismissal of plaintiffs' Securities Exchange Act § 10(b) claims of misrepresentations in proxy statements because the merger only needed to be authorized by two-thirds of the corporation's shares, approval of the merger was assured by defendant's 72% share of the company, and as minority shareholders, plaintiffs' "votes were not required for approval of the merger that was the subject of the proxy statements" and thus they "did not show causation based on the approval of the merger").

Furthermore, the condition requiring 95 percent of XpresSpa Holdings to sign Joinder Agreements was disclosed in both the Merger Agreement and XpresSpa Group's Form S-4 that was publicly filed with the SEC. Thus, Mr. Kainz had the independent means

to know that he did not need to sign the Joinder Agreement, and reliance on Mr. Bernstein's statement was unreasonable. See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997) ("if the plaintiff has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations") (citation and internal quotation marks omitted); Ward v. TheLadders.com, Inc., 3 F. Supp. 3d 151, 166 (S.D.N.Y. 2014) ("'Only when matters are held to be peculiarly within defendant's knowledge is it said that plaintiff may rely without prosecuting an investigation,' because the plaintiff would have 'no independent means of ascertaining the truth.'") (quoting Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006)).

**CONCLUSION**

Defendants' motion for oral argument (Dkt. No. 42) is denied.

Plaintiff's cross-motion for a partial stay (Dkt. Nos. 44 and 45) is denied, and judgment will be entered dismissing the

complaint (Dkt. No 39).

So ordered.

Dated:   New York, New York
         November 13, 2019

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.